UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC ARLEN MOOTZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C13-718-JCC-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Eric Arlen Mootz appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

I.  FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 42-year-old man with a high school diploma and two years of college education. Administrative Record ("AR") at 66. His past work experience includes employment as a computer programmer. AR at 189. Plaintiff was last gainfully employed in January 2000. AR at 188.

REPORT AND RECOMMENDATION - 1

On March 19, 2010, Plaintiff filed a claim for SSI payments. AR at 155-58. Plaintiff asserts that he is disabled due to mental illness and blood clots. AR at 187.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 92-99, 107-12. Plaintiff requested a hearing, which took place on November 15, 2011. AR at 50-80. On December 13, 2011, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 33-44. After reviewing additional evidence, the Appeals Council denied Plaintiff's request for review. AR at 1-6. On April 23, 2013, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Mootz bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

REPORT AND RECOMMENDATION - 3

404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On December 13, 2011, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 19, 2010, the alleged onset date.

2. The claimant's depressive disorder (not otherwise specified) and anxiety disorder (not otherwise specified) are severe.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. The claimant has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is capable of working in an environment where he can avoid concentrated exposure to hazards and perform simple, routine, repetitive one- to two-step tasks, with no public contact and few, if any, changes in the work setting.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1969, and was 41 years old, which is defined as a younger individual age 18-49, on the date the alleged disability onset date.[2]

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 19, 2010, through the date of this decision.

AR at 36-44.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in finding that Plaintiff's mental health impairments did not meet a listing;

2. Whether the ALJ erred in discounting Plaintiff's credibility; and

3. Whether the ALJ erred in discounting opinions from David Sandvik, M.D.; William R. Wilkinson, Ed.D.; Donna Smith, Psy.D.; and Evelyn Moser, LMHP.[3]

Dkt. 16 at 2.

## VII. DISCUSSION

A. <u>The ALJ Did Not Err in Finding that Plaintiff's Mental Health Impairments Do Not Meet a Listing.</u>

Plaintiff argues that the ALJ erred at step three in findings that his mental health impairments did not meet Listing 12.04, 12.06, or 12.09. *See* AR at 37-38. The ALJ explained why he found that Plaintiff had only mild restriction in activities of daily living; moderate difficulties in social functioning and concentration, persistence, and pace; and no episodes of decompensation of extended duration. *Id*. Based on those findings, the ALJ concluded that Plaintiff did not satisfy the "paragraph B" criteria, and thus did not have a listing-level

---

[3] This assignment of error encompasses Plaintiff's challenge to the ALJ's RFC assessment, because the only errors in the RFC assessment that Plaintiff identifies are based on limitations indicated by Drs. Sandvik, Wilkinson, and Smith, and Ms. Moser. Dkt. 16 at 16-17. Thus, Plaintiff essentially reiterates his arguments regarding the medical opinions when arguing that the ALJ failed to account for those opinions when assessing his RFC. But because, as described *infra*, the ALJ provided valid, sufficient reasons to discount the challenged medical opinions, the ALJ did not need to account for those medical opinions when assessing Plaintiff's RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

REPORT AND RECOMMENDATION - 6

combination of impairments. AR at 38. According to Plaintiff, the evidence cited by the ALJ does not directly support his conclusions. Dkt. 16 at 3-7.

Plaintiff fails to establish error in the ALJ's analysis, however, because he merely argues that the ALJ's rationale is "not self evident" (Dkt. 16 at 3). But the relevant question is whether the ALJ's analysis is based on reasonable inferences drawn from the record, and the Court finds that it is. As to activities of daily living, the ALJ reasoned that because Plaintiff is able to handle his personal care needs, does not require reminders to take care of hygiene or to take medication, and can complete grocery shopping with help and complete simple chores, Plaintiff is only mildly restricted in activities of daily living. AR at 37. Plaintiff cites no evidence showing that the ALJ overlooked evidence that he is more restricted than the ALJ found, nor does he establish or even argue that the ALJ's interpretation of the evidence was unreasonable. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

As to social functioning, the ALJ found that Plaintiff had moderate difficulties, in light of his ability to attend church once a week and NA meetings multiple times a week, and his ability to interact with his girlfriend, brother, and others. AR at 37. The ALJ acknowledged that Plaintiff reported a tendency to isolate and avoid interacting with people, especially in large groups. *Id*. The ALJ also found that Plaintiff had moderate difficulties as to concentration, persistence, and pace, given that he can handle his personal hygiene, maintain his medication regimen, use public transportation, attend NA meetings, and maintain some hobbies. *Id*. The ALJ also acknowledged that the Plaintiff reported difficulty maintaining attention due to anxiety and depression, that he often needs to read something multiple times to understand it, and that his medications slow down his psychomotor skills. *Id*.

REPORT AND RECOMMENDATION - 7

Plaintiff argues that the ALJ did not explain how he reached his conclusion that the evidence showed "moderate" difficulties in these areas, as opposed to more severe difficulties, but the purportedly contrary evidence cited by Plaintiff does not actually reveal error in the ALJ's analysis. Dkt. 16 at 6-7. Plaintiff cites medical opinions regarding various aspects of his functioning, but the ALJ provided valid, sufficient reasons (discussed *infra*) to discount those opinions (AR at 41-42), and thus did not need to credit them at step three. The ALJ described the evidence that supported his conclusions regarding the "paragraph B" criteria, and Plaintiff has not shown that his interpretation of that evidence was unreasonable. Furthermore, the only opinion explicitly addressing the "paragraph B" criteria found that Plaintiff did not satisfy them. *See* AR at 658. Accordingly, Plaintiff has not established that the ALJ erred at step three.

B.   The ALJ Did Not Err in Discounting Plaintiff's Credibility.

The ALJ provided a number of reasons to discount Plaintiff's credibility, namely: (1) inconsistent daily activities, (2) evidence of improvement with treatment, and (3) inconsistent medical evidence. AR at 39-40. Plaintiff acknowledges that the ALJ summarizes various pieces of evidence, but argues that the ALJ nonetheless "does not state how these facts support a finding that the Plaintiff is less than credible." Dkt. 16 at 15. Noting that there is no evidence of malingering, Plaintiff argues that the ALJ erred in citing evidence that does not actually undermine his subjective testimony. *Id*.

　　　1.   *Legal Standards on Assessing Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; Social

Security Ruling ("SSR") 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. [4] *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

    2.    *The ALJ Cited Evidence Undermining Plaintiff's Complaints*

The ALJ's decision first summarizes Plaintiff's subjective testimony and then discusses the evidence that the ALJ found to be inconsistent with his testimony.  AR at 38-40. Specifically, the ALJ summarized Plaintiff's testimony regarding the effect of his depression

---

[4] Plaintiff argues that the ALJ failed to follow the correct legal standard for assessing his credibility because he failed to address the factors set out in SSR 96-7p. Dkt. 16 at 15.  As noted by the Commissioner, however, explicit discussion of all of the SSR 96-7p factors is not required. Dkt. 19 at 9.  SSR 96-7p requires that an ALJ provide specific reasons to discount a claimant's credibility, and the ALJ did so here.  *See* AR at 39-40.

REPORT AND RECOMMENDATION - 9

and anxiety, and then identified evidence showing that Plaintiff was not as restricted as he claimed to be: he was able to cope with his anxiety enough to take information technology classes in April 2011 (due to improvement with medication, meditation, and breathing exercises), and his counselor noted many normal findings on a mental status examination. AR at 39-40 (citing AR 676, 763-64, 768, 773). The ALJ also noted that Plaintiff was capable of complying with his appointment schedule, and had proactively sought treatment for his mental and physical symptoms. AR at 40. Finally, the ALJ found that Plaintiff was able to live with his girlfriend and others in a clean and sober house, and attend recovery group meetings, which undermines his testimony regarding an inability to interact with other people. *Id*. The evidence cited by the ALJ reasonably supports the ALJ's conclusion that Plaintiff is able to function at a higher level than alleged. Plaintiff's implied alternate interpretation of the evidence does not establish error in the ALJ's adverse credibility determination.

C.       The ALJ Did Not Err in Discounting Medical Opinions.

Plaintiff assigns error to the ALJ's assessment of four opinions: he contends that the ALJ erred in discounting these opinions, and instead crediting the State agency opinions. The Court will address each disputed opinion in turn.

1.       *Standards on Assessing Medical Opinions*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must

give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

In order to determine whether a claimant is disabled, an ALJ may also consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his or her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* SSR 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects,

REPORT AND RECOMMENDATION - 11

along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

2. *Dr. Sandvik's Opinion*

Dr. Sandvik evaluated Plaintiff in June 2010, just after Plaintiff had taken some anxiety medication to avoid being nervous. AR at 622-25. Dr. Sandvik concluded:

> . . . [Plaintiff's] formal mental status testing was encumbered because he appeared somewhat sedated. He noted himself that he took an antianxiety medication because he thought it would help him perform better. He was slow in responding to questions at times, and had difficulty focusing and his focus was fairly sporadic through the evaluation. He has some difficulty with social interaction and he may have had this from his youth when he was often alone and his mother was away in psychiatric care. One wonders about the degree that he could perform work activities consistently through a normal workday, owing to the fact that he seems not to tolerate stress well, and does not have particularly good interpersonal skills. He could perhaps work part time in situations of fairly low stress. Approaches to him psychiatrically should include supportive counseling[,] helping him problem solve, medications for depression and anxiety, continued monitoring of his sobriety, and medication to help him sleep. He appears able to manage any funds granted him himself at this time.

AR at 625. The ALJ assigned "little weight" to Dr. Sandvik's conclusions, finding them inconsistent with the Global Assessment of Functioning ("GAF") score of 65 that Dr. Sandvik assigned. AR at 41. The ALJ also noted that Dr. Sandvik performed limited objective testing, which was "encumbered" by his medication side effects, and thus he relied on Plaintiff's non-credible self-report. *Id*. Lastly, the ALJ stated that Dr. Sandvik's opinion did not address whether adjusting Plaintiff's medication would alleviate the side effects observed during the evaluation. *Id*.

Plaintiff argues that the ALJ erred in finding Dr. Sandvik's GAF score to be inconsistent with his conclusions, because Dr. Sandvik did not find any "extreme" limitations or symptoms, and thus reasonably found Plaintiff to have only mild to moderate symptoms.

REPORT AND RECOMMENDATION - 12

Dkt. 16 at 9.  But Plaintiff misses the ALJ's point: Dr. Sandvik opined that Plaintiff had only mild to moderate symptoms, with only intermittent difficulty in social/occupational functioning, and can often "function fairly well," and yet also opined that he was unable to work full-time.  AR at 624-25.  The ALJ reasonably construed these aspects of Dr. Sandvik's opinion to be internally inconsistent and discounted the opinion accordingly.  *See Bayliss*, 427 F.3d at 1216 (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province").

Neither did the ALJ err in finding that the effect of Plaintiff's medication rendered Dr. Sandvik's testing less reliable, because Dr. Sandvik himself noted that his testing was "encumber[ed]" by Plaintiff's use of anxiety medication.  AR at 625.  Despite Plaintiff's slowed responses, he was nonetheless able to interpret abstractions and his thought process was coherent and relevant, although his ability to subtract serial 7s and recall items after a delay was somewhat impaired.  AR at 623.  The "mental status exam" portion of Dr. Sandvik's opinion also includes a record of Plaintiff's self-reported symptoms, including a history of anger problems and his description of how he copes when upset.  AR at 623.  In light of Dr. Sandvik's inclusion of that self-report within his mental status examination findings, the ALJ did not err in finding that Dr. Sandvik relied on Plaintiff's self-report.  Particularly because Dr. Sandvik was apparently unable to separate out the effects of Plaintiff's medication from his underlying symptoms, the ALJ did not err in discounting Dr. Sandvik's compromised test findings.[5]  Because the ALJ provided specific and legitimate reasons to discount Dr. Sandvik's opinion, he did not err in discounting it.

---

[5] Plaintiff argues that Dr. Sandvik may have considered whether Plaintiff's symptoms were due to the medication or to his underlying condition, but "may not have considered it

REPORT AND RECOMMENDATION - 13

3.  *Dr. Wilkinson's Opinion*

Dr. Wilkinson examined Plaintiff in October 2010, and did not review any records before rendering an opinion regarding his functioning. AR at 704-16. He opined that Plaintiff had severe limitations in his ability to relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting. AR at 707. Dr. Wilkinson also assigned a GAF score of 29, which he indicated was based on Plaintiff's self-report as well as his interview behavior. AR at 706.

The ALJ discounted Dr. Wilkinson's opinion on the grounds that he performed "little objective testing and relied heavily on the claimant's self-report of symptoms[,]" because his GAF score was inconsistent with his own findings regarding Plaintiff's moderate limitations in cognitive functioning, and because his opinions regarding Plaintiff's social functioning were inconsistent with the medical evidence and Plaintiff's own self-report. AR at 41-42.

As to the ALJ's first reason, Dr. Wilkinson did in fact cite many self-reported symptoms as the basis for his opinions, and this is a valid reason to discount his opinion. *See* AR at 707; *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). As to the ALJ's second reason, a GAF score of 29 is indeed a more severe rating than Dr. Wilkinson's findings would suggest, because Dr. Wilkinson found Plaintiff capable of completing most of his activities of daily living, found Plaintiff's cognitive

---

worthy of note." Dkt. 16 at 9. But even if that is the case, Dr. Sandvik himself indicated that he was unable to fully test Plaintiff's capabilities due to his medication side effects, which lends support to the ALJ's interpretation of Dr. Sandvik's test results as compromised. AR at 623, 625.

REPORT AND RECOMMENDATION - 14

limitations to be only moderate, and found that Plaintiff was successfully managing his sobriety by attending recovery group meetings and living in clean and sober housing. *Compare* AR at 707-08 *with* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (GAF of 21 to 30 describes behavior "considerably influenced by delusions or hallucinations or serious impairment in communication or judgment" or "inability to function in almost all areas").

As to the ALJ's third reason — Dr. Wilkinson's opinion regarding social limitations is inconsistent with medical evidence and Plaintiff's self-reported activities — Plaintiff argues that the ALJ erred in finding Dr. Wilkinson's opinion to be inconsistent with the medical evidence "as a whole," because such a finding does not indicate specifically which evidence is inconsistent. Dkt. 16 at 14. But when the ALJ's decision as a whole is considered, the ALJ cited medical evidence (AR at 41) that was inconsistent with Dr. Wilkinson's opinion: Dr. Sandvik found that Plaintiff's difficulty in social functioning occurred only intermittently, and did not prevent him from maintaining "meaningful interpersonal relationships[.]" AR at 624-25. Dr. Sandvik's opinion is therefore inconsistent with Dr. Wilkinson's opinion that Plaintiff's social functioning is severely limited, as is Plaintiff's self-reported ability to live with his girlfriend and others in clean and sober housing, and to attend recovery group meetings multiple times a week. *See* AR at 708. Inconsistency with the medical record and a claimant's activities are valid reasons to discount a medical opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity). Accordingly, the ALJ provided specific and legitimate reasons to discount Dr. Wilkinson's opinion.

4. *Dr. Smith's Opinion*

Dr. Smith evaluated Plaintiff in October 2009, while he was in a "highly structured inpatient chemical dependency treatment program." AR at 719. She opined that Plaintiff had several marked limitations, in his ability to exercise judgment and make decisions, relate appropriately to co-workers and supervisors, and respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR at 720. She rated Plaintiff's GAF at 50, and indicated that she found his symptoms to be in the "severe" range. AR at 719.

The ALJ gave "little weight" to Dr. Smith's opinion because her GAF score was inconsistent with her more specific opinions, indicating moderate or moderate-to-marked limitations (rather than "severe"). AR at 42. He also noted that Dr. Smith evaluated Plaintiff during a time of incarceration, which may have exacerbated his anxiety and stress levels. *Id*.

Plaintiff argues that the ALJ's first "reason" does not really explain why Dr. Smith's opinion is entitled to less weight: he characterizes the ALJ's decision as merely restating Dr. Smith's opinion. Dkt. 16 at 13. But Plaintiff overlooks the ALJ's emphasis on the discrepancy between Dr. Smith's explanation of her GAF score (indicating "severe" symptoms causing "major problems in his daily functioning") and her opinions regarding Plaintiff's functioning (none of which indicate "severe" limitations). AR at 719-20. Internal inconsistencies are a valid reason to discount a medical opinion. *See Bayliss*, 427 F.3d at 1216 (9th Cir. 2005).

Furthermore, Plaintiff's argument regarding the ALJ's second reason to discount Dr. Smith's opinion merely urges the Court to interpret the evidence of Plaintiff's circumstances at the time of Dr. Smith's evaluation in an alternate manner, but does not establish that the ALJ's inference was unreasonable. *See* Dkt. 16 at 13 ("It would be *as reasonable* to theorize that once released into an unstructured environment with unpredictable demands, stressors, and the need to find shelter and food, an individual's mental health conditions would worsen."

REPORT AND RECOMMENDATION - 16

(emphasis added)).  Accordingly, Plaintiff has not identified an error in the ALJ's assessment of Dr. Smith's opinion.

     5.    *Ms. Moser's Opinions*

Plaintiff's mental health counselor, Ms. Moser, provided two opinions regarding his functioning, in August and October 2011.  AR at 729-33, 915-19.  The ALJ discounted Ms. Moser's August 2011 opinion, finding Plaintiff severely limited due to anxiety, to be contradicted by other medical opinions and also inconsistent with her own mental status examination findings.  AR at 42.[6]  He also found both of Ms. Moser's opinions to be based largely on Plaintiff's self-reported symptoms, and he questioned whether Ms. Moser was qualified to evaluate Plaintiff's ability to work.  *Id*.

Ms. Moser's opinions regarding the severity of Plaintiff's functional limitations are indeed more extreme than other opinions of record.  *Compare* AR at 731 *with* AR at 707, 720.  Inconsistency with other medical evidence is a valid reason to discount a medical opinion.  *See Tommasetti*, 533 F.3d at 1041.  Furthermore, Ms. Moser supported her functional opinions in August 2011 (AR at 731) with descriptions of Plaintiff's symptoms, rather than her own observations, and most of her October 2011 questionnaire answers were unexplained or unsupported (AR at 917-918).  The Court agrees with Plaintiff (Dkt. 16 at 12) that the ALJ merely speculated as to whether Ms. Moser was qualified to assess Plaintiff's ability to work, but because he provided two other germane reasons to discount her opinion, Plaintiff has failed to establish prejudicial error.

---

[6] The ALJ cites a document that has been expunged from the record as containing Ms. Moser's mental status examination findings.  AR at 42 (citing AR at 734).  Thus, the Court cannot review whether this reason supports the ALJ's conclusion.

REPORT AND RECOMMENDATION - 17

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14)** days of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 11, 2014**.

DATED this 27th day of March, 2014.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge